06-4813-cr
United States v. Delossantos

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term 2007

Argued: May 13, 2008                    Decided: July 25, 2008

Docket No. 06-4813-cr

-----------------------------------------------------X

UNITED STATES OF AMERICA,

                    Appellant,

        - against -

MARINO DELOSSANTOS,

                    Defendant,

FRANCISCO RODRIGUEZ,

                    Defendant-Appellee.

-----------------------------------------------------X

Before:  FEINBERG, MINER, and B.D. PARKER, Circuit Judges.

    The United States appeals from an order of the district court granting defendant-appellee's motion to suppress evidence because the police lacked probable cause for his arrest. The order of the district court is reversed.

> JAMES R. SMART, Assistant United States Attorney (RICHARD J. SCHECHTER, Assistant United States Attorney, WILLIAM J. NARDINI, Assistant United States Attorney, Of Counsel, on the brief), for KEVIN J. O'CONNOR, United States Attorney for the District of Connecticut, New Haven, Conn., for Appellant.

SARAH F. RUSSELL, Assistant Federal Defender, for THOMAS G. DENNIS, Federal Defender, New Haven, Conn., for Defendant-Appellee.

FEINBERG, Circuit Judge:

Defendant-appellee Francisco Rodriguez was arrested after driving another man to the scene of a drug deal that turned out to be a police sting. The United States District Court for the District of Connecticut (Janet C. Hall, J.) concluded that the police lacked probable cause to arrest Rodriguez and granted his motion to suppress post-arrest statements and evidence obtained from his apartment and car. For the reasons explained below, we reverse the order of the district court.

## I. BACKGROUND[1]

Defendant Marino Delossantos met an undercover Drug Enforcement Administration ("DEA") task force agent, Officer Felix Martinez of the Stamford, Connecticut Police Department, in a bar. The two men discussed a possible cocaine deal.

At a second meeting, on October 25, 2005, Delossantos told Officer Martinez that he looked familiar and that he suspected Martinez was a Stamford police officer. He nevertheless agreed to "go home" to get a cocaine sample. Agents followed Delossantos's car to 1315 Howard Avenue, a multifamily

---

[1] This summary is drawn from the district court's findings of fact. United States v. Rodriguez, No. 3:06-cr-57(JCH), 2006 WL 2860633, at *1-4 (D. Conn. Oct. 4, 2006).

-2-

residential building in Bridgeport, Connecticut. Delossantos entered the building for a few minutes; he then left and drove to meet Officer Martinez at a Cumberland Farms grocery store and gas station in neighboring Fairfield. There, Delossantos got in the officer's car and gave him the cocaine sample, telling him he could also get some heroin. During the meeting, Delossantos also asked Officer Martinez if he knew two people from Stamford; although the officer did know them, he denied it. Because of Delossantos's evident suspicions, the agents decided that they would arrest him at the next meeting.

That night, Officer Martinez called Delossantos and asked, in code, to buy cocaine and heroin. They agreed to meet the next day at the Cumberland Farms.

DEA agents surveilling 1315 Howard Avenue the next morning saw Delossantos and another man, later identified as defendant-appellee Rodriguez, leave the building's front porch and get in the car that Delossantos had driven the previous day. Agents saw Rodriguez drive the car toward Interstate 95, then lost sight of it. Half an hour later, at 11:15 a.m., Officer Martinez spoke to Delossantos on his cell phone, and Delossantos asked for more time; Martinez said he could hear "car sounds" and another person in the background. When they spoke again at 12:20 p.m., Martinez could again hear "road

noise" and another person. Both times, Martinez believed Delossantos was in a car.

Agents saw both men return in the car to 1315 Howard Avenue at 12:30 p.m. Delossantos entered the building while Rodriguez walked behind the car and disappeared from view. They returned to the car about ten minutes later, and Rodriguez again drove them in the direction of the Cumberland Farms. Agents followed the car.

Delossantos called Officer Martinez en route and told him, in Spanish, to follow his car to another location when he arrived. The phrase Delossantos used was variously translated as "I don't want to do it there" or "Let's go some place else" (by Martinez) and "I don't want to be there" (by defendants' translator). During the call, Martinez could hear Delossantos speaking to another person in Spanish. Martinez asked Delossantos to wait for him at the Cumberland Farms. When the car pulled into the gas station, agents immediately surrounded it and arrested both Delossantos and Rodriguez.

In response to questioning, Rodriguez told the agents that he lived at 1315 Howard Avenue. He further consented to a search of his apartment and car, which revealed drugs and other evidence. Delossantos independently told the agents that he shared an apartment with Rodriguez and that the drugs were his, not Rodriguez's. Delossantos also told the agents that

Rodriguez agreed to drive Delossantos knowing Delossantos was engaged in drug dealing.

A federal grand jury returned an indictment against Delossantos and Rodriguez in March 2006, charging them with conspiracy to distribute 500 or more grams of cocaine and 100 or more grams of heroin, and charging Delossantos with substantive possession counts. Delossantos pled guilty to the conspiracy counts in July 2006. In August 2006, the grand jury returned a superseding indictment that added substantive possession counts against Rodriguez.

Rodriguez moved to suppress his post-arrest statements and the evidence seized from his apartment and car. He was granted leave to file a late motion to suppress evidence. The district court held an evidentiary hearing on the suppression motion on August 23, 2006. By order dated October 4, 2006, the district court granted the suppression motion. The Government timely brought this interlocutory appeal. Rodriguez's trial has been stayed pending this appeal; he is currently on pretrial release.

II. DISCUSSION

A. Governing Law

On appeal from the grant of a suppression motion, we review the district court's factual findings for clear error,

-5-

viewing them in the light most favorable to the Government, but we analyze de novo the existence of probable cause. United States v. Howard, 489 F.3d 484, 490-91 (2d Cir. 2007). The Government bears the burden of proof as to establishing probable cause. United States v. Elgisser, 334 F.2d 103, 110 (2d Cir. 1964).

The main question we must resolve is whether Rodriguez was legally arrested. If he was not, the evidence derived from his post-arrest statements and the consensual search of his apartment and car must be suppressed as the fruit of an unlawful arrest. Wong Sun v. United States, 371 U.S. 471, 485-86 (1963).[2]

Rodriguez argues that his arrest was invalid under the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." A warrantless arrest is unreasonable under the Fourth Amendment unless the arresting officer has probable cause to believe a crime has been or is being committed. Devenpeck v. Alford, 543 U.S. 146, 152 (2004); United States v. Watson, 423 U.S. 411, 417 (1976). Probable cause exists where the arresting officer has "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

_____

[2] The Government does not contest the district court's conclusion that the evidence against Rodriguez would not have been inevitably discovered absent his arrest.

warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

The Supreme Court has repeatedly stated that the probable-cause standard is "a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Maryland v. Pringle, 540 U.S. 366, 370 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Because the standard is fluid and contextual, a court must examine the totality of the circumstances of a given arrest. Id. at 371; Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). These circumstances must be considered from the perspective of a reasonable police officer in light of his training and experience. United States v. Moreno, 897 F.2d 26, 31 (2d Cir. 1990), abrogated on other grounds by Horton v. California, 496 U.S. 128 (1990).

B. Analysis

The district court found that at the time of the arrest the agents knew or had reasonably trustworthy information as to the following facts: (1) Delossantos had suspicions about the undercover officer's true identity; (2) the morning of the

planned drug buy, Rodriguez drove Delossantos from 1315 Howard Avenue, where the agents reasonably believed Delossantos was storing drugs, towards Cumberland Farms, the agreed-on meeting place; (3) Rodriguez and Delossantos were the only people in the car; (4) shortly afterwards, Delossantos asked for more time while another person was audible in the background; (5) after the request for more time, Rodriguez drove Delossantos back to 1315 Howard Avenue; (6) shortly afterwards Rodriguez drove Delossantos a third time from 1315 Howard Avenue to the Cumberland Farms; and (7) while the car was en route, Delossantos called the undercover officer to express discomfort with the chosen meeting place.

We think the agents had probable cause to arrest Rodriguez based on these facts. The Supreme Court has said that it is reasonable to believe that "a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." Wyoming v. Houghton, 526 U.S. 295, 304-05 (1999); see also United States v. Patrick, 899 F.2d 169, 172 (2d Cir. 1990) (holding that after drugs were discovered in defendant's backpack, agents had reasonable basis to believe that co-defendant "was not just a mere innocent traveling companion but was traveling and acting in concert" with defendant). Here, Rodriguez drove Delossantos on multiple trips, including the

-8-

final trip to the drug-buy location. More specifically, the Supreme Court has also said that it is reasonable to infer that if one person in a vehicle is engaged in drug dealing, so are the other passengers, because drug dealing is "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." Pringle, 540 U.S. at 373. Here, the agents could have reasonably inferred that Delossantos was unlikely to be accompanied by an innocent person because Delossantos was already suspicious and thus had reason to worry about the prospect of a witness against him.

We disagree with Rodriguez and the district court that this case is analogous to United States v. Di Re, 332 U.S. 581 (1948), which also involved the attempted sale of contraband (in Di Re, counterfeit gas ration coupons) from a car. The police in Di Re, acting on an informant's tip, arrested all three occupants of the car -- the driver, the informant sitting in the back seat, and the defendant Di Re in the passenger seat. Id. at 583. The Supreme Court held that the officers lacked probable cause to arrest Di Re for either possession or conspiracy, because while the informant held counterfeit coupons in his hand and told the officers he got them from the driver, Di Re was neither seen holding coupons nor named by the informant as having any. Id. at 592.

We think Di Re is distinguishable from the facts here. The Court in Di Re was careful to note that "[t]he argument that one who 'accompanies a criminal to a crime rendezvous' cannot be assumed to be a bystander" is indeed "forceful enough in some circumstances." Id. at 593. The Court said this argument was "farfetched" with respect to Di Re because (among other reasons) the informant fingered the driver, but not Di Re, as a culprit prior to the arrests. Id. at 593-94. There was no equivalent singling out of Delossantos but not Rodriguez.[3] See Pringle, 540 U.S. at 374 (distinguishing Di Re on the sole basis that "[n]o such singling out occurred in this case"). Furthermore, the evidence against Rodriguez at the time of his arrest was stronger than that against Di Re. Whereas Di Re was merely seen sitting in the suspect's vehicle when officers approached, the agents here saw Rodriguez ferry Delossantos between the likely drug-stash location and the transaction point and heard Delossantos discuss details of the transaction

---

[3] Rodriguez's argument that Officer Martinez effectively singled out Delossantos but not Rodriguez, because he "knew that Delossantos was the guilty person," is specious. In Di Re, the informant had reason to know whether Di Re was guilty, so his silence concerning Di Re was properly understood as exculpatory. Here, Officer Martinez did not have preexisting information about Rodriguez's involvement.

(albeit in veiled terms) with Rodriguez evidently sitting beside him.[4]

We are also unpersuaded by Rodriguez's attempts to minimize, qualify, or explain away individual facts that tend to establish his participation in the crime. Rodriguez argues, among other things, that he and Delossantos might have returned to 1315 Howard before the meeting not to retrieve drugs but simply because Delossantos may have "had other things to do"; that Rodriguez might not have been in the car when Delossantos spoke to the undercover officer; that while Rodriguez was spotted on the building's front porch, there was no evidence he had ever been inside; and that Rodriguez might have been unaware of the purpose of the trip and the meaning of Delossantos's comments, having been brought along as nothing but an "innocent dupe." These omissions and hypothetical

---

[4] Two other Supreme Court cases cited by Rodriguez, Ybarra v. Illinois, 444 U.S. 85 (1979), and Sibron v. New York, 392 U.S. 40 (1968), are even less relevant. In Ybarra, police obtained a warrant to search a bar and its bartender yet decided to additionally search all the patrons inside, 444 U.S. at 88-89; in Sibron, police stopped the defendant simply after observing him speaking with known heroin addicts, 392 U.S. at 45. These cases establish that a person's presence at a crime scene or association with criminal suspects do not, without more, amount to probable cause to arrest. But as we have explained above, the agents' suspicions of Rodriguez were not based solely on his association with Delossantos but on the objective likelihood that the two men were engaged in a common criminal endeavor.

-11-

explanations are persuasive in varying degrees, but they do not alter the existence of probable cause.

First, the Supreme Court has instructed us not to consider individual facts in isolation but to examine the totality of the circumstances. Pringle, 540 U.S. at 371. In United States v. Arvizu, 534 U.S. 266 (2002), a border patrol agent who stopped defendant's vehicle testified about a number of small details that might have each been explained away but that collectively aroused his suspicions. The Court held that, in declining to give weight to any observation "that was by itself readily susceptible to an innocent explanation," the lower court engaged in erroneous "divide-and-conquer analysis."[5] Id. at 274; see also United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) ("The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause."). For the same reason, we cannot discount facts one by one simply because Rodriguez has suggested hypothetical explanations for them that are consistent with his innocence.

Second, although Rodriguez posits innocent explanations for his conduct, we must evaluate the facts in light of the

---

[5] Although Arvizu involved the existence of reasonable suspicion to make a traffic stop rather than of probable cause to arrest, the opinion is relevant here because both standards require us to examine the totality of the circumstances. See United States v. Yusuf, 461 F.3d 374, 390 n.15 (3d Cir. 2006).

training and experience of the arresting agents. See Moreno, 897 F.2d at 31. "'[S]ome patterns of behavior which may seem innocuous enough to the untrained eye may not appear so innocent to the trained police officer who has witnessed similar scenarios numerous times before.' As long as the elements of the pattern are specific and articulable, the powers of observation of an officer with superior training and experience should not be disregarded." United States v. Price, 599 F.2d 494, 501 (2d Cir. 1979) (alteration in original) (quoting United States v. Oates, 560 F.2d 45, 61 (2d Cir. 1977)); see also United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 85 (2d Cir. 2002). In this case, the agents testified that, in their experience, a drug dealer rarely brings along an uninvolved bystander during drug deals or speaks about the details of transactions in the presence of a bystander, even in code. The agents also testified that a dealer who is uneasy about a transaction will often bring an associate for assistance and protection. We are bound to give these observations, which are supported by the agents' training and experience, their due weight.

Finally, while Rodriguez's explanations might well be plausible enough to engender reasonable doubts about his guilt, the standard for probable cause is lower than that for conviction. United States v. Juwa, 508 F.3d 694, 701 (2d Cir.

2007); United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983). Thus, "innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands." Gates, 462 U.S. at 244 n.13. We think the arresting agents had reason to think Rodriguez's involvement in the drug deal was, at minimum, probable. See id. at 231 (emphasizing that probable cause deals in "probabilities" rather than "hard certainties" (internal quotation marks omitted)).

## III. CONCLUSION

Because we find that the agents had probable cause to arrest Rodriguez, there was no reason to suppress the evidence against him. The order of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.