10-4527-cr
United States v. Steppello

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2011

(Argued: December 7, 2011     Decided: December, 23, 2011)

Docket No. 10-4527-cr

_____

UNITED STATES OF AMERICA,

*Appellant*,

—v.—

DEAN A. STEPPELLO,

*Defendant-Appellee.*

_____

Before:
    JACOBS, *Chief Judge*, CABRANES, and WESLEY, *Circuit Judges*.

Appeal from two interlocutory orders of the United States District Court for the Northern District of New York (Hurd, *J.*). The first order suppressed cocaine seized from Defendant's person incident to his warrantless arrest, as well as statements made by Defendant, based on a lack of probable cause to support the arrest. The order also suppressed evidence seized from Defendant's residence pursuant to the execution of a search warrant on the ground that without the reference to the cocaine seized from Defendant's person, the warrant application did not establish probable cause to search the residence. The second order denied the government's motion for reconsideration of the suppression decisions in the first order. We hold that the district court erred in determining that Defendant's warrantless arrest was not supported by probable cause, and thus evidence seized from Defendant's

person and residence, as well as the statements made by Defendant during and after his arrest, should not have been suppressed.

**REVERSED** and **REMANDED**.

---

Paul D. Silver, Assistant United States Attorney (Richard Southwick, Tamara Thomson, Assistant United States Attorneys, *on the brief*), for Richard S. Hartunian, United States Attorney for the Northern District of New York, Albany, NY, *for Appellant*.

Lee D. Greenstein, Law Offices of Lee D. Greenstein, Delmar, NY, *for Defendant-Appellee*.

---

PER CURIAM:

The government appeals two interlocutory orders of the United States District Court for the Northern District of New York (Hurd, *J.*), entered on August 20, 2010 and October 29, 2010, respectively. The first order suppressed cocaine seized from the person of Defendant-Appellee Dean A. Steppello incident to his warrantless arrest, as well as statements made by Steppello, based on a lack of probable cause to support the arrest. The order also suppressed evidence seized from Steppello's residence pursuant to the execution of a search warrant on the ground that without the reference to the cocaine seized from Steppello's person, the

2

warrant application did not establish probable cause to search the residence. The second order denied the government's motion for reconsideration of the suppression decisions in the first order. The government argues that the district court erred in determining that Steppello's arrest was not supported by probable cause. We agree and conclude that the evidence seized from Steppello's person and residence, as well as the statements made by Steppello during and after his arrest, should not have been suppressed.

**I. Background**

**A.  Steppello's Arrest**

On June 25, 2008, James Eric Jones, an investigator with the New York State Police Community Narcotics Enforcement Team ("CNET"), executed a search warrant at the residence of Richard Szuba. During the search, Szuba agreed to cooperate with police and identified Steppello as his cocaine supplier. Investigator Jones was aware that Steppello had been the subject of an earlier drug investigation and that he had sold cocaine in the presence of a New York state trooper in November 2001. Szuba indicated that his transactions with Steppello had been

ongoing for approximately four years and that Steppello would supply him with four ounces of cocaine in exchange for approximately $3600 every two weeks. Szuba then described the coded nature of their cocaine transactions—Szuba would call Steppello on his cell phone and ask "Are you good?" and Steppello would deliver the cocaine to Szuba's residence shortly thereafter. Szuba showed the police Steppello's residence on the second floor of a two-story house, and described Steppello's vehicle as an Envoy or sport utility vehicle ("SUV").[1]

While officers were questioning Szuba at his house, others, including Investigator Sullivan, were surveilling Steppello's residence. The officers had Szuba call Steppello to determine whether he would be nearby because during their surveillance of Steppello's home, they observed a person leaving the building.[2] At approximately 1:14 p.m.,

---

[1] There is a discrepancy in the suppression hearing testimony about the color of the vehicle. Szuba testified that he told police that Steppello drove a "silver colored SUV type truck." Investigator Matthew Sullivan testified that Szuba told police that Steppello operated a "gray or silver colored GMC." However, Investigator Jones testified that Szuba described Steppello's vehicle as a "light gold colored Envoy or SUV."

[2] The record does not indicate that the officers knew the identity of the person leaving. Indeed, the record does not establish that Szuba provided Steppello's physical description to the police. Nor does the record establish that Investigator

4

Investigator Jones closely observed Szuba call Steppello, whose telephone number was preprogrammed as a speed dial number in Szuba'a cell phone.  During the conversation, Investigator Jones heard Szuba say "you good, this afternoon, 20 minutes."  Although Investigator Jones knew that someone was speaking to Szuba, he could not hear what that person said.  At the completion of the call, Szuba told Investigator Jones that Steppello would arrive at Szuba's house in twenty minutes with cocaine.

At 1:34 p.m., Investigator Sullivan observed a white male arrive at Steppello's residence in a silver GMC SUV and enter the residence.  Five minutes later, Investigator Sullivan observed the white male get back into the vehicle and drive away.  Investigator Sullivan followed the vehicle to the vicinity of Szuba's residence, where he terminated the surveillance to avoid detection.  Investigator Sullivan immediately notified the officers at Szuba's residence that the person under surveillance was coming.

Although Szuba advised officers that he usually left

Jones knew Steppello's physical description from his knowledge of the earlier investigation.

the garage door open when Steppello delivered cocaine,[3] the police closed the door and hid in the garage. The white male arrived at Szuba's house and parked his GMC Envoy in the driveway. An officer inside the house relayed to Investigator Jones, who was in the garage, that Steppello called Szuba's cell phone ten times and Szuba's house once.[4] When the officers heard a person exit the vehicle, they proceeded to exit the garage and arrested the white male in the driveway. As the officers took the person to the ground to handcuff him, he uttered that "he could do somebody."

The officers immediately searched the person and found a small plastic bag containing cocaine in his pants pocket. The person arrested was Steppello. Moments later, after Investigator Jones issued *Miranda* warnings, Steppello stated

---

[3] The district court did not make this specific factual finding. The record indicates that the finding is supported by the testimonies of not only two officers, but also Szuba himself. On appeal, Steppello merely argues that Szuba testified that the garage door was not *always* open when Steppello arrived, and a third officer did not recall any discussion about the garage door. However, Steppello does not contest that Szuba testified that he *generally* left the garage door open for Steppello.

[4] Investigator Jones did not actually see the white male make the phone calls because he could not continue looking through a garage window for fear of being discovered. Szuba testified that he did not receive any phone calls from Steppello while the police were at his house. However, Szuba also explained that officers took his phone from him during that time. Cellular telephone records established that Steppello made eleven unanswered calls to Szuba between 1:43 p.m. and 1:47 p.m.

that he wanted to speak to his attorney and the District Attorney before identifying his supplier.

**B.    Search Warrant for Steppello's Residence**

After securing the cocaine from Steppello's person, Investigator Jones proceeded to the Utica City Court, where he reviewed and signed both the application for a warrant to search Steppello's residence and vehicle and the affidavit in support of the search warrant application.  The affidavit established that Investigator Jones—a New York State police officer for twelve years and member of the CNET for approximately three years—had been thoroughly trained to combat drug trafficking.  The affidavit also established that as a result of his training and experience with drug-related investigations and arrests and with handling confidential informants, Investigator Jones was familiar with the communication methods and customs used by persons involved in drug trafficking.

The affidavit then set forth the events that occurred that day, which included the controlled phone call Szuba made to Steppello, the surveillance of Steppello's residence, and the arrest of Steppello and incident seizure of cocaine from his person.  The affidavit also noted

Steppello's criminal history and that he was the registered owner of the GMC Envoy he drove to Szuba's house. Finally, the affidavit concluded, based upon the information provided by Szuba, the surveillance conducted by New York State Police, and the resulting arrest of Steppello and incident seizure of cocaine from his person, that Steppello was utilizing his residence and vehicle to further a cocaine distribution operation.

The Utica City Court issued the search warrant. During the subsequent search of Steppello's residence, police seized two jars containing cocaine, drug-related paraphernalia, and $4000 in cash.

**C.   Indictment and Suppression Decision**

On May 28, 2009, a grand jury returned a two-count indictment charging Steppello with possessing with intent to distribute an unspecified quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and possessing with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). In a pretrial motion, Steppello sought to suppress the cocaine seized from his person incident to his arrest, as well as the cocaine seized from his residence pursuant to the

8

execution of the search warrant.  In a subsequent motion, Steppello sought to suppress statements he made following his arrest on the basis that they were the fruit of his unlawful arrest.  On June 7, 2010, the district court conducted an evidentiary hearing on the issues raised by Steppello's motions.

In a Memorandum-Decision & Order, entered on August 20, 2010, the district court determined that the admissibility of the cocaine seized from Steppello's person and the statements he made following his arrest depended on whether police had probable cause to arrest him.  The court concluded that probable cause was lacking because at the time Steppello was arrested, "the police had nothing more than the partially corroborated account of a criminal informant with no history of reliability." *United States v. Steppello*, 733 F. Supp. 2d 347, 351 (N.D.N.Y. 2010).  The court also noted that Steppello had not engaged in any suspicious activity while under surveillance.  The court next determined that the admissibility of evidence seized from Steppello's residence depended on the legality of his arrest because without the reference to the cocaine seized from his person, the warrant application did not establish

9

probable cause to search the residence.  Accordingly, the district court granted Steppello's motion to suppress (1) the cocaine seized incident to his arrest; (2) the statements he made during and after his arrest; and (3) the evidence seized from his residence.

## D.   **Motion for Reconsideration**

The government moved for reconsideration of the district court's suppression decision.  The government argued that, in light of this Court's decision in *United States v. Gagnon*, 373 F.3d 230 (2d Cir. 2004), the district court improperly discounted the information provided by Szuba.  The government also noted that the district court erred when it determined in its suppression decision that no cellular phone records were in evidence to corroborate the government's account that Steppello made eleven calls to Szuba while sitting in his car in Szuba's driveway.  The district court denied the motion for reconsideration without explanation.  With the authorization of the Solicitor General of the United States, this appeal ensued.

**II. Discussion**

**A.    Legality of Steppello's Arrest**[5]

The government contends that the district court erred in determining that police lacked probable cause to arrest Steppello because the court failed to consider the totality of the circumstances known to police and failed to appreciate the reliability of Szuba's information.  We agree.  Neither the district court's determination nor Steppello's arguments on appeal square with our well-established principles of probable cause.

"Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested."  *Gagnon*, 373 F.3d at 236.  "[T]he probable-cause standard is a practical, nontechnical conception that

---

[5] "On appeal from a district court's grant of a motion to suppress, we review factual findings for clear error, viewing those facts in the light most favorable to the government, and we analyze *de novo* the ultimate determination of such legal issues as probable cause." *United States v. Howard*, 489 F.3d 484, 490–91 (2d Cir. 2007) (citation and internal quotation marks omitted).  We likewise analyze *de novo* "whether the exception for a search incident to . . . arrest is applicable." *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008) (citation omitted).

11

deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.  Because the standard is fluid and contextual, a court must examine the totality of the circumstances of a given arrest." *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008) (citations and internal quotation marks omitted).

Contrary to the district court's conclusion, the facts surrounding Steppello's arrest, *see supra* Part I.A., were sufficient to provide police with probable cause to make the arrest.  The district court made two significant errors in discounting the evidence.  First, the district court failed to examine the totality of the circumstances, and instead, considered individual facts in isolation.  *See Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *Delossantos*, 536 F.3d at 161.  Second, the district court failed to "evaluate the facts in light of the training and experience of the arresting agents."  *Delossantos*, 536 F.3d at 161.

> [S]ome patterns of behavior which may seem innocuous enough to the untrained eye may not appear so innocent to the trained police officer who has witnessed similar scenarios numerous times before. As long as the elements of the pattern are specific and articulable, the powers of observation of an officer with superior training and experience should not be disregarded.

12

*Id.* (alteration in original) (internal quotation marks omitted).

For example, the district court erred in discounting the significance of the phone call between Szuba and Steppello "due to its brevity, the inability to hear what defendant said, and the lack of any reference to a drug sale." *Steppello*, 733 F. Supp. 2d at 351. At the time of the arrest, Investigator Jones had been employed by the New York State Police for twelve years and a member of the CNET for three years. An officer with his training and experience certainly would have recognized that the cryptic nature of the call was consistent with other transactions in which drug dealers "often engage in a so-called narcotics code." *United States v. Velasquez*, 271 F.3d 364, 372 (2d Cir. 2001) (internal quotation marks omitted). Indeed, immediately after the phone call, Szuba confirmed to Investigator Jones that Steppello would be at Szuba's residence in twenty minutes with cocaine.[6]

Next, the district court erred in discounting the

---

[6] The use of code language makes sense and is chronicled regularly in our cases. *See Velasquez*, 271 F.3d at 372; *United States. v. Bryce*, 208 F.3d 346, 349 (2d Cir. 1999); *United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995). One would not expect two individuals involved in the sale of illegal substances to speak in traditional terms of commerce.

13

significance of the eleven phone calls made by Steppello to Szuba immediately prior to Steppello's arrest. Contrary to the district court's assertion that there was a "lack of any evidence of defendant's or Szuba's cellular phone records for the day of the arrest," *Steppello*, 733 F. Supp. 2d at 352, Steppello's phone records were received in evidence during the suppression hearing. Although Szuba testified that he never received any of the calls, he also testified that the police took his phone away from him for "a while" that day. Moreover, in light of Investigator Jones's training and experience, it would have been reasonable for him to believe that Steppello acted suspiciously by making the phone calls instead of getting out of the car, especially given Szuba's prediction that closing the garage door might alert Steppello.

Finally, although police did not identify the white male under surveillance, the circumstances suggested that it was Steppello: (1) at 1:14 p.m., Szuba called Steppello and said the same coded words he claimed to have used before to purchase cocaine from Steppello; (2) immediately after that phone call, Szuba told Investigator Jones that Steppello would be arriving in twenty minutes with cocaine; (3) at

14

1:34 p.m., a person driving the type of SUV Szuba described as Steppello's vehicle arrived at and entered Steppello's residence; (4) five minutes later, the person drove the SUV to Szuba's residence; (5) upon arriving at Szuba's house, the person did not immediately exit the car; and (6) Steppello made eleven phone calls to Szuba between 1:43 p.m. and 1:47 p.m.  Any reasonable officer with knowledge of those circumstances at the time of the arrest would be entitled to conclude that the person under surveillance was Steppello, and that he was about to deliver cocaine to Szuba.

With regard to the reliability of the information provided by Szuba, the district court erred in discounting that information on the ground that Szuba did not have a history of reliability as a confidential informant.  In *United States v. Gagnon*, we found that probable cause existed to search the defendant's vehicle and thus reversed this same district judge's order suppressing currency seized during the search.  373 F.3d at 240.  In doing so, we clearly articulated the legal principles used to evaluate information provided by informants:

> Often the information needed to supply probable cause is not gathered independently by police

15

officers but instead is provided by professional criminal informants, witnesses to a particular event, or participants in the crime at issue. In assessing the veracity of an informant's statements, it is improper to discount the information provided simply because [the informant] has no proven record of truthfulness or accuracy. There is, in particular, no need to show past reliability when the informant is in fact a participant in the very crime at issue. However, although other circuits have recognized that criminals caught red-handed may be reliable sources of information because [t]he informant's interest in obtaining leniency creat[es] a strong motive to supply accurate information, we have also cautioned that a criminal informer is less reliable than an innocent bystander with no apparent motive to falsify. Whether or not the informant speaks to an officer in person or through the mediation of an anonymous means of communication may also bear upon the reliability of the information he provides; thus, a face-to-face informant must be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false.

In addition to considering an informant's veracity, reliability, and basis of knowledge, in assessing the totality of the circumstances we also evaluate whether the information an informant provides is corroborated by independent police investigation because an informant who is right about some facts is more likely to be right about others. We consider such corroboration in evaluating the existence of probable cause even if only an informant's account of anticipated innocent activities is confirmed.

*Gagnon*, 373 F.3d at 236 (alternations in original)

(citations, internal quotation marks, and ellipses omitted).

Here, as in *Gagnon*, the district court employed an incorrect legal standard in evaluating the information provided by the informant. Szuba was a participant in the crime at issue; he gave the information to the officers in person after they executed a valid search warrant at his residence; and at that time, Szuba was motivated to be truthful to receive leniency. Those circumstances suggest reliability. *See id.* at 237–38.

Moreover, the information Szuba provided was specific and corroborated. For example, Szuba predicted just what Steppello would do in response to his cryptic phone call. Szuba also accurately described Steppello's residence and the type of vehicle he drove. Finally, the district court was clearly and inexplicably wrong in concluding that "there was no independent corroboration of [Szuba's] allegation of [Steppello's] drug dealing." *Steppello*, 733 F. Supp. 2d at 351. Investigator Jones was aware that Steppello had sold cocaine in the presence of an undercover officer while he was the subject of a prior narcotics investigation. Szuba's corroborated information supports the finding that police had probable cause to arrest Steppello.

17

In sum, given the totality of the circumstances, the officers had probable cause as a matter of law to believe that Steppello was delivering cocaine at the time of his arrest.  Accordingly, the cocaine seized incident to Steppello's arrest and the statements he made during the course of his arrest should not have been suppressed.

**B.     Suppression of the Evidence Seized From Steppello's Residence**[7]

As an initial matter, we agree with both the district court and the government that without reference to the cocaine seized from Steppello's person, probable cause was lacking to issue the warrant to search his residence.  Accordingly, whether the district court erred in suppressing the evidence seized from Steppello's residence turns on the legality of Steppello's arrest.[8]

As explained above, the district court erred in determining that police did not have probable cause to arrest Steppello at Szuba's house.  The fact that the

---

[7] We review *de novo* whether there was probable cause to issue a search warrant.  *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006).

[8] The district court also declined to apply the good faith exception to the exclusionary rule.  *Steppello*, 733 F. Supp. 2d at 354 (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)).  The government, however, has declined to address the good faith ruling on appeal.

officers seized cocaine from Steppello's person incident to his lawful arrest, along with the other facts disclosed in the application and affidavit in support of the search warrant, certainly established probable cause to believe that cocaine was located in Steppello's residence. *See United States v. Elmore*, 482 F.3d 172, 184 (2d Cir. 2007). Accordingly, the search was lawful, and the evidence seized from Steppello's residence should not have been suppressed.

**C.    Remand Instructions**

We note that we are reversing the suppression order of this district judge on substantially the same grounds as we reversed the same judge's suppression order in *Gagnon*. We are mindful that there are factual differences between *Gagnon* and this case, but we cannot overlook that the legal principles set forth in *Gagnon* strongly compel that Szuba's information should not have been discounted and that probable cause existed to arrest Steppello. The district court made no credibility determinations that undercut the factual record we have recited above.

The government brought our decision in *Gagnon* to the district judge's attention in its motion for

19

reconsideration, but the district judge denied the motion without comment.  When circumstances "might reasonably cause an objective observer to question [the judge's] impartiality," we have the power to remand the case to a different judge.  *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 21 (2d Cir. 1996) (alteration in original) (internal quotation marks omitted); *see also United States v. Robin*, 553 F.2d 8, 9-10 (2d Cir. 1977) (*en banc*).  We believe that is warranted here.  Accordingly, we order that, upon remand to the district court, this case be transferred to a different judge.

### III. Conclusion

For the foregoing reasons, the suppression order of the district court is **REVERSED** and the case is **REMANDED** with instructions to assign the case to a different judge.