19-1331-cr
*United States v. Williams*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of March, two thousand twenty.

Present:
>           ROBERT A. KATZMANN,
>                   *Chief Judge*,
>           MICHAEL H. PARK,
>                   *Circuit Judge*,
>           GEOFFREY W. CRAWFORD,
>                   *District Judge*.[1]

---

United States of America,

>           *Appellant*,

>           v.                                                        No. 19-1331-cr

Andrew Dontae Williams,

>           *Defendant-Appellee*.

---

| | |
|---|---|
| For Appellant: | MATTHEW J. LASHER, Assistant United States Attorney (Gregory L. Waples, Assistant United States Attorney, *on the brief*), *for* Christina E. Nolan, United States Attorney for the District of Vermont, Burlington, VT. |
| For Defendant-Appellee: | ROBERT KATIMS, Hoff Curtis, P.C., Burlington, VT. |

---

[1]     Judge Geoffrey W. Crawford, Chief United States District Judge for the District of Vermont, sitting by designation.

Appeal from a judgment of the United States District Court for the District of Vermont (Reiss, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **REVERSED** in part and **VACATED** in part, and the case is **REMANDED** for further proceedings.

The government appeals from an order of the United States District Court for the District of Vermont (Reiss, *J.*) granting Defendant-Appellee Andrew Williams's motion to suppress certain evidence and statements obtained following Williams's arrest on suspicion of unlawfully possessing and distributing crack cocaine. *See United States v. Williams*, 383 F. Supp. 3d 284 (D. Vt. 2019). We assume familiarity with the factual and procedural background of this case, and the issues raised on appeal.

On appeal from a suppression order, we review the district court's factual findings for clear error and its legal determinations — including the determination of whether probable cause existed — *de novo*. *See United States v. Pabon*, 871 F.3d 164, 173 (2d Cir. 2017).

The relevant facts, found by the district court by a preponderance of the evidence and unchallenged on appeal, are these: On May 17, 2018, Drug Enforcement Administration ("DEA") Special Agent Timothy Hoffmann received a tip from an informant, with whom he had worked previously, that a woman named Danielle Guerin would be traveling to Winooski, Vermont to buy $500 worth of crack cocaine from a person described as "a black male from Pennsylvania who wore glasses and was well-dressed." *Williams*, 383 F. Supp. 3d at 290.[2] That same day, Special Agent Hoffmann and his colleagues surveilled the informant at a meeting with Guerin in Burlington, Vermont. Guerin and the informant left in a car, which the federal agents followed to

_____

[2] Unless otherwise indicated, in quoting cases all citations, alterations, emphases, footnotes, and internal quotation marks are omitted.

a gas station in Winooski, Vermont. Guerin left the gas station alone, and the agents surveilled her as she walked in the direction of 111 Weaver Street, a multi-unit building. Although nobody saw Guerin enter the building (and she may not have entered beyond its porch), Special Agent Hoffmann saw her leaving that address and approached her on foot. Special Agent Hoffmann demanded that Guerin "hand over the crack," at which point Guerin produced "a plastic bag containing a white chunky substance . . . ." *Id.* at 291. Special Agent Hoffmann and Guerin moved to a nearby cemetery to speak further; there, Guerin told Special Agent Hoffmann and one of his colleagues that she had purchased $500 worth of crack cocaine on the porch of 111 Weaver Street from a black male named Sam. Guerin also stated that she had purchased crack cocaine from Sam on at least two occasions earlier that week. Guerin described Sam as a "young, black male from Philadelphia who wore glasses and was well-dressed." *Id.* at 292. Special Agent Hoffmann's colleague, who had also been present for this interview, relayed the description to Special Agent Kristian Pinkham, who had stayed behind to monitor activity at 111 Weaver Street.

Special Agent Pinkham was told that the suspected seller of crack cocaine was "an African-American male from Pennsylvania who wore glasses, a button-up shirt, and a baggy overshirt or sweater." *Id.* Special Agent Pinkham then saw a black male wearing glasses and a button-up shirt leave 111 Weaver Street and enter a parked car with Pennsylvania license plates. Special Agent Pinkham followed the car in an unmarked law-enforcement vehicle as it drove through Winooski and watched as it made a three-point turn at the end of one street, which he believed to be a surveillance-detection technique. Special Agent Pinkham motioned for the car to stop. At some point, Special Agent Pinkham also activated the emergency white flashing lights that were hidden in the front grill of his vehicle. At first, the driver of the car attempted to maneuver around the federal agents' cars, but when that attempt failed, the driver left his vehicle and attempted to flee on foot. The federal agents chased after Williams, and one of the agents shouted "stop, police"

3

when he was approximately fifty yards away from Williams. Although the law enforcement agents pursuing Williams were dressed in plain clothes, Special Agent Pinkham was wearing his badge around his neck. The federal agents eventually apprehended the suspect and placed him under arrest.

A search incident to that arrest revealed that the suspect — Defendant Williams — was carrying $3,636.49 in cash and a cell phone. *Id.* at 293. The agents brought Williams's car to the local police station, where a warrantless search revealed about seventeen grams of "suspected cocaine base" and about $4,904 in additional cash. *Id.* The agents questioned Williams both before and after administering *Miranda* warnings. The district court suppressed all of the evidence obtained from the search of Williams's car and person — as well as all of Williams's pre- and post-*Miranda* statements other than those made in response to simple booking questions — on the ground that this evidence was all fruit of an unconstitutional arrest. *Id.* at 296-97. According to the district court, Special Agent Pinkham lacked probable cause to arrest Williams based on the description he received and his observations prior to the arrest.

Reviewing that determination *de novo*, we reverse. "Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Steppello*, 664 F.3d 359, 363-64 (2d Cir. 2011). We take no issue with the district court's conclusion that a simple description of a well-dressed black male is insufficient, without more, to create probable cause to arrest any well-dressed black male seen in the area. But Guerin's description contained additional points of identification: her source of supply was operating from 111 Weaver Street; he was a young man from Pennsylvania. Agent Pinkham received the additional information that the

4

supplier was wearing a loose-fitting overcoat or similar garment and a button-shirt.[3] When Special Agent Pinkham observed Williams — who otherwise matched Guerin's description, vague though that description may have been on its own — leave the northern Vermont building where Guerin had said she bought the drugs and, most tellingly, enter a car bearing Pennsylvania license plates, he had "sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing" that Williams was Guerin's supplier. *Steppello*, 664 F.3d at 363-64. Williams's subsequent flight, viewed from the perspective of the pursuing agents, further contributed to the circumstances supporting a determination of probable cause.[4] In the totality of the circumstances, we conclude that a person of reasonable caution would have been justified in believing that Williams was the person who had sold Guerin the crack cocaine.

We therefore hold that Williams's arrest was supported by probable cause. The district court's contrary conclusion led it to suppress the evidence obtained from a search made incident to that arrest. We reverse the district court's order suppressing that evidence because, pursuant to the search-incident-to-arrest doctrine, it was obtained consistent with the Fourth Amendment. *See United States v. Diaz*, 854 F.3d 197, 205 (2d Cir. 2017). We also reverse the district court's order

---

[3] Furthermore, the information provided by the original informant matched the information provided by Guerin. Specifically, the informant told Special Agent Hoffmann that Guerin was going to purchase $500 worth of crack cocaine from a well-dressed black man from Pennsylvania who wore glasses, and Guerin later told Special Agent Hoffmann that she had purchased $500 of crack cocaine from a well-dressed black man from Philadelphia who wore glasses.

[4] The district court also erred in analyzing the probative value of Williams's flight from Williams's own perspective, rather than the perspective of an "objectively reasonable police officer." *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *see Williams*, 383 F. Supp. 3d at 297 (finding that "when [Williams] ran from his vehicle, there is no evidence that *he knew* he was fleeing from the police") (emphasis added).

to the extent that it suppressed Williams's statements on the sole ground that they were traceable to his arrest, which the district court had held to be unconstitutional.[5]

The district court also suppressed the evidence discovered when agents searched Mr. Williams's vehicle. On appeal, the government contends that because the initial arrest of Mr. Williams was supported by probable cause, the evidence seized when Mr. Williams was searched incident to that arrest should inform the analysis of whether the agents also had probable cause to search the vehicle. Mr. Williams defends the district court's holding and analyzes the search of his vehicle independently of his initial arrest and the search of his person. Because the district court assumed, for purposes of its analysis of this question, that the agents lacked probable cause to arrest Mr. Williams and search his person incident to that arrest, it did not consider what effect a contrary conclusion would have on the question whether probable cause existed to search Mr. Williams's car. We therefore vacate so much of the district court's order as suppressed the evidence obtained from Mr. Williams's car without opining further, and remand so that the district court may revisit the search of Mr. Williams's car in the first instance in light of the conclusions set forth above.

For the reasons stated and to the extent set forth herein, the order of the district court is REVERSED in part and VACATED in part, and the case is REMANDED for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[5] The government does not challenge, and we do not disturb, the district court's order suppressing Williams's pre-*Miranda* statements other than those made in response to booking questions.