81 N.J. Super. 321 (1963)
195 A.2d 499
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN PADAVANO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1963.
Decided November 27, 1963.
*323 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Leonard Meyerson argued the cause for defendant (Mr. Abraham Miller, attorney).
Mr. William A. O'Brien, Assistant Prosecutor, argued the cause for plaintiff (Mr. James A. Tumulty, Jr., Hudson County Prosecutor, attorney).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Defendant moved to suppress "the admission of certain slips of paper which were removed from a 1955 Oldsmobile Automobile of the defendant, without a search warrant." After hearing the State's witnesses (the defendant presented no evidence), the county judge denied the motion, and defendant appeals.
The judge announced the following findings of fact and conclusions of law at the end of the hearing:
"I find the facts to be that police officers while at a certain intersection in the town of Kearny observed the vehicle operated by the defendant in this case make a fast and wide turn around the corner from Columbia Avenue onto Chestnut Street. Noticing this the officers instituted pursuit and apprehended the driver, the defendant in this case, John Padavano, about a half block away. When he was stopped he was asked for his license. He produced same, both the driver's license and owner's card. And it was subsequently noted that a discrepancy appeared in relation to the address. While this was going on one of the officers noted two parking tickets, and without any statements made by anybody the driver of the car reached for the parking tickets and handed them to the officer. In connection with the parking tickets the officers questioned the driver as to whether or not there were any more and the driver said, `Go ahead and check *324 if you want to.' The police decided to make the arrest after the discrepancies appeared in the registration and driver's license address information.
Subsequent to that decision to make an arrest both police officers got into the front seat of the car and the defendant Padavano was put in the rear seat of the car. Detective Crookall decided to start up the car and push back the seat. And it was obvious to me why he would have to do that, because of his much heavier build which he has compared to the driver of the car. While in the act of pushing back the seat he testified that he looked down and there under his eyes he noted the yellow sheets of paper and he recognized certain numbers thereon. He subsequently testified that he was aware from his experience as a member of the gambling squad, with which group he had worked for the past five years, that this constituted gambling paraphernalia. And, of course, the defendant subsequently was charged as a result therewith.
It is my opinion that the initial arrest made by the police officers was a valid one.
It is also my opinion that the finding of the numbers slips was purely inadvertent or accidental and has nothing to do with the question of unreasonable search and seizure, and therefore there has been no violation of either the Fourteenth Amendment of the United States Constitution or Article I, Paragraph 7, of the New Jersey Constitution."
Defendant challenges these findings. He contends that the detectives stopped his automobile and arrested him on the mere pretext that he had violated the Motor Vehicle Act, their real purpose being to search the automobile, and that they then made a thorough search of the automobile which resulted in the finding of the lottery slips.
Our task is not to weigh the evidence, but to determine whether the findings of the trial judge have sufficient support in the testimony, bearing in mind that the trial judge saw and heard the witnesses. State v. Taylor, 81 N.J. Super. 296 (App. Div. 1963); Ker v. California, 374 U.S. 23, 31-32, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Cf. State v. Zuzulock, 39 N.J. 276, 281 (1963).
The testimony was that Detectives Crookall and Wyllie had received an anonymous "tip," as a result of which they stationed themselves in a squad car in the vicinity of Chestnut Street and Columbia Avenue and waited for defendant. After about 20 to 25 minutes defendant appeared, driving his automobile *325 on Columbia Avenue. The officers testified that the car was traveling "at a fast rate of speed," veered to the wrong side of the street as it swung into Chestnut Street, and continued at a high speed on Chestnut Street. Crookall said to Wyllie, "What shall we do now? Look at him," to which Wyllie replied, "Well, let's take him for his manner of driving." Crookall testified that they pursued defendant's automobile, not because they intended to search defendant or because they suspected him of gambling, but only because "of the careless manner" is which he was driving his automobile. N.J.S.A. 39:4-97 provides that "A person who drives * * * carelessly, or without due caution and circumspection * * * shall be guilty of careless driving."
The detectives overtook defendant, brought him to a halt, and asked him for his license and registration. When he produced them, one listed his address at 48 Columbia Avenue and the other as 239 Middlesex Street, both in Harrison. According to Crookall, defendant said "that he had moved." R.S. 39:3-36 requires owners and operators to "notify the commissioner, in writing, of a change in his residence within one week after the change is made." The trial judge found that "The police decided to make the arrest after the discrepancies appeared in the registration and driver's license address information."
We deem it unnecessary to relate the balance of the testimony, for it is adequately summarized in the judge's findings, and some of it will be commented upon more fully later in this opinion.
Defendant does not deny that N.J.S.A. 39:5-25 gives a police officer the authority to arrest without a warrant any person who, in the presence of the officer, violates the Motor Vehicle Act. However, defendant contends that he was not guilty of careless driving, and the failure to notify the Commissioner of his change of address was so minor an offense that the police would never have arrested him for that if they were not intent upon using it as an excuse to detain and search him for proof that he was operating a lottery. In *326 short, defendant insists the detectives used the alleged motor vehicle violations only as a pretext to stop and search him.
As proof that he was not speeding, defendant points out that the detectives admitted they could not estimate his speed in terms of miles per hour. But such precision is not necessary. State v. Bookbinder, 82 N.J. Super. 179 (App. Div. 1963). Defendant points out also that there was no screeching of brakes, but that, too, is not conclusive of either proper speed or turn.
Defendant argues, in effect, that when the police watch a defendant because they suspect him of one offense, but see him commit another, they may not arrest him for the latter offense and then search for evidence of the former offense as incidental to that arrest. Assuming (without deciding) that is true, it has no bearing here, for here the court found there had been no search.
"A search implies a prying into hidden places for that which is concealed and it is not a search to observe that which is open to view." People v. Elmore, 28 Ill.2d 263, 192 N.E.2d 219, 220 (Sup. Ct. 1963). The lottery slips were revealed when Crookall slid back the driver's seat of defendant's automobile in order to drive the car (with defendant in the back seat) to headquarters. This was no more a search than if the slips had been concealed behind the sun visor and had been discovered when the visor was turned down to shield the officer's eyes from the sun.
But, says defendant, when a trifling, technical violation of the Motor Vehicle Act is seized upon as an excuse for stopping a defendant, even evidence in plain view may not be seized, for the very use of the flimsy excuse to stop defendant, hoping to find proof of crime, itself makes the stopping an unlawful arrest, and the seizure of evidence after such an arrest, even without a search, is invalid.
Defendant cites a number of cases which, he says, so hold, but we find that they involve facts different than those in the case at bar. For example, in Clay v. United States, 239 F.2d 196 (5 Cir. 1956), the arrest was by federal revenue agents, *327 who had no authority to arrest for state motor vehicle violations. In Burley v. State, 59 So.2d 744 (Fla. Sup. Ct. 1952) and Collins v. State, 65 So.2d 61 (Fla. Sup. Ct. 1953), the court found (in addition to other distinguishing facts) that there had been no motor vehicle violation. In Cox v. State, 181 Tenn. 344, 181 S.W.2d 338, 154 A.L.R. 809 (Sup. Ct. 1944), there was no motor vehicle violation; the officer, on a tip that defendant was transporting liquor, stopped him on the pretext that he wanted to see his driver's license. Compare, however, Acklen v. State, 196 Tenn. 314, 267 S.W.2d 101 (Sup. Ct. 1954), in which defendant "League drove off at a rapid rate of speed and did not slow down as he crossed Union Street. The officer [who was watching League as a suspected lottery operator] started after him and turned on his siren and as a result of this League stopped. The officer asked League for his license and as a result of this request League reached in his shirt pocket and pulled out his Federal wagering stamp and some numbers tickets, which he handed to the officer." It was held that the numbers tickets had been properly received in evidence because they had been secured by the officer "without making any search at all."
The fact that a defendant is being watched because he is suspected of one crime does not immunize him during the period of surveillance from arrest for another offense. This is neatly illustrated by the following excerpt from the Acklen case, 267 S.W.2d, at p. 104:
"* * * Many years ago this Court had before it a related question in Billingsley v. State, 156 Tenn. 116, 299 S.W. 797. * * * Briefly the facts in that case were that certain officers illegally trespassed upon property * * * without a search warrant and when they did so Billingsley ran, even though he was on his own property, and as he went over a fence he pulled a pistol and shot at the officers. Billingsley was convicted of carrying a pistol. The evidence that he was carrying a pistol was objected to on the identical ground here raised. This Court said:
`The evidence as to the pistol was not obtained as a result of an unlawful search or an illegal arrest. If the defendant had not drawn his pistol and exhibited it, the officers would not have seen it.' * * *."
*328 Here the detectives had the right to arrest for violation of the Motor Vehicle Act; while undertaking to drive the car to headquarters, the lottery slips became uncovered by the sliding back of the seat. As the trial judge said, "the finding of the numbers slips was purely inadvertent or accidental and has nothing to do with the question of unreasonable search and seizure."
The order appealed from is affirmed.