**UNITED STATES of America, Appellee,**

v.

**Raymond Ernest RICARD, Appellant.**

**No. 1287, Docket 77-1109.**

United States Court of Appeals, Second Circuit.

Argued June 13, 1977.

Decided Sept. 16, 1977.

---

**46**

William J. Gallagher, New York City (The Legal Aid Society, Federal Defender Services Unit, Barry T. Bassis, New York City, of counsel), for appellant.

Richard F. Lawler, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S.D.N.Y., Frederick T. Davis, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before SMITH and OAKES, Circuit Judges, and CARTER, District Judge.*

ROBERT L. CARTER, District Judge:

Appellant, Raymond Ernest Ricard, is appealing his conviction and sentence for violation of 18 U.S.C. § 1708 on the basis of alleged violations of appellant's due process and search and seizure rights.

On August 19, 1976, an information was filed (76 Cr. 776) charging appellant with taking two books of money orders from the mail in violation of 18 U.S.C. § 1701. If convicted on such a charge Ricard could have been sentenced to a maximum of a $100 fine or six months imprisonment or both. On October 5 and 6, 1976, before Judge Griesa of the Southern District of New York, a hearing was held on Ricard's motion to suppress certain physical evidence. Judge Griesa denied the motion. On December 14, 1976, the government filed a superseding indictment (S 76 Cr. 766). Count Two of this indictment repeated the charge that Ricard had violated 18 U.S.C. § 1701. Count One of the indictment added the charge that appellant had unlawfully possessed two books of money orders, knowing them to have been stolen. 18 U.S.C. § 1708. Conviction on this count carried a possible maximum sentence of a $2,000 fine or five years imprisonment or both. Trial on the indictment took place on December 21, 1976, before Judge Griesa without a jury. At the conclusion of the trial Judge Griesa found appellant guilty of Count One. Count Two was dismissed, no evidence on it having been introduced by the government. On February 23, 1977, Judge Griesa sentenced appellant to a two year term of imprisonment, six months to be served in jail and the remainder suspended with the appellant placed on probation. Execution of the sentence was stayed pending resolution of this appeal.

I

The superseding indictment, which as stated previously included the more serious

* Of the United States District Court for the Southern District of New York, sitting by designation.

charge under 18 U.S.C. § 1708, was filed by the government subsequent to a conversation between the Assistant United States Attorney then handling the case (Ms. Parver) and appellant's attorney, the relevant substance of which was detailed by the prosecutor at the December 15, 1976 pre-trial conference before Judge Griesa. She stated:

> "I do know I spoke with Mr. Curley [defense counsel] about a week ago and asked whether his defendant was prepared to go to trial and Mr. Curley said yes, and I said in that case I am informing you that the government is bringing a superseding indictment." Minutes of December 15, 1976 pre-trial conference, at 3.

Ms. Parver told the court and counsel that another assistant had been responsible for filing the original information, and that after she had reviewed the file she had determined that a charge of possessing stolen mail was warranted. Minutes, December 15, 1976 pre-trial conference, at 6, 7. At this conference, defense counsel objected to the addition of the possession count on the ground that it was a "potential penalty . . . for defendant's exercise of his right to trial." *Id.,* at 7. Judge Griesa later denied appellant's formal motion to dismiss the felony count.

Relying primarily on *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), appellant contends that this was error. He argues that inclusion of the possession count in the superseding indictment "posed a realistic likelihood of 'vindictiveness' for appellant's decision to proceed to trial," Appellant's brief at 9, and that his due process rights were thereby violated. This claim is insubstantial.

In *North Carolina v. Pearce, supra,* the Supreme Court confronted the issue of whether a trial court could impose a more severe sentence upon retrial and reconviction after a defendant has successfully appealed his original conviction. The Court held that while this was not absolutely prohibited, due process

"requires that vindictiveness against a defendant for having successfully attacked his conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." 395 U.S. at 725, 89 S.Ct. at 2080.

To assure the absence of such motivation, the Court held that if a more severe sentence is imposed after reconviction, the sentencing court must state on the record the reasons calling for the sentence.

The rule in *Pearce* was later extended to prevent the possibility of prosecutorial vindictiveness from deterring a defendant's exercise of his procedural rights. *Blackledge v. Perry, supra.* In *Blackledge,* the defendant Perry had been initially charged with a misdemeanor assault with a deadly weapon. Perry was convicted of this charge after trial by a lower North Carolina court and was sentenced to six months imprisonment. Under North Carolina law, Perry had the right to a trial *de novo* in a higher court, which right he exercised. Prior to trial, however, the prosecution secured an indictment which charged him with the felony of assault with intent to kill, even though the indictment covered the same facts which had formed the basis of the original misdemeanor charge. Perry entered a plea of guilty to the indictment, a result of which was that Perry received a stiffer sentence than originally. The Supreme Court, applying the general principles of *Pearce,* held that the prosecution had overstepped the bounds of due process when it obtained the felony indictment.

"A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo,* without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting himself to a significantly increased potential period of incarcera-

tion. . . . We hold, therefore, that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory rights to appeal by bringing a more serious charge against him prior to the trial *de novo."* 417 U.S. at 28–29, 94 S.Ct. at 2102–03.

As appellant points out with understandable vigor, the Court's decision did not turn on any finding of prosecutorial vindictiveness. Like *Pearce, Blackledge* was bottomed on the concern that a defendant not be deterred from exercising his constitutional or statutory rights by the *apprehension* of retaliatory action by the prosecution. *Id.,* at 28, 94 S.Ct. at 2098.

■ Appellant argues that the prosecutor's action in filing the superseding indictment created the apprehension of vindictiveness, and that accordingly *Pearce* and *Blackledge* require reversal of his conviction, despite the absence of any proof of a vindictive motive. However, even if the circumstances of this case arguably pose a realistic likelihood of the apprehension of prosecutorial vindictiveness and bring into play the principles of *Pearce* and *Blackledge,* this by no means mandates reversal. Unlike *Blackledge,* in this case the prosecutor was able to justify the increase in charges brought against appellant. Another attorney had originally handled the case and filed the information charging a misdemeanor. The case was later assigned to her, and when she reviewed the file several weeks before the trial date, she realized that the facts warranted adding a felony charge. As Judge Griesa held, and as the facts adduced at trial showed, this was a reasonable step for the prosecutor to take.[1] Trial transcript at 59–60. Moreover, there is no evidence of any plea bargaining in progress between the defendant and the prosecution to warrant a conclusion that the defendant's decision to go to trial rather than plead triggered the superseding indict-

ment. On the contrary, the conversation between the defendant's counsel and the prosecution as to whether the defendant was going to trial was merely a request for information by the prosecution to determine whether she need undertake the task of drafting and filing the superseding indictment which she had already concluded was necessary if there was to be a trial.[2] Certainly, given the lack of any substantial evidence of vindictiveness on the part of the prosecution, the increase in the charges brought against appellant cannot be said to trench upon defendant's due process rights.

## II

At the suppression hearing of October 5–6, 1976, appellant testified on direct examination that he had been traveling on the New Jersey Turnpike when stopped for speeding by a state trooper. After checking his license, the trooper ordered appellant out of the car, and, in the course of a frisk, discovered a tin foil packet containing cocaine. Appellant testified that the stolen money orders were also in this pocket, but they were not discovered until he was searched at police headquarters. The testimony of Santiago Negron, the passenger, was consistent with this story.

The government then called Thomas Kelleher, the policeman who had stopped appellant's car. Kelleher testified that he observed appellant travelling at 75 miles per hour in a 55 miles per hour zone and stopped him for speeding. At Kelleher's direction appellant and his passenger got out of the car. Appellant produced his license and registration, and asked for leniency because he was a postal worker. Thereupon, as appellant reached into his jacket pocket for some identification, Kelleher observed a tin foil packet. Kelleher asked appellant what was in the packet, and appellant replied "Nothing." Nevertheless, suspicious that the packet contained

---

1. As it turned out, in fact, the original charge of obstruction of the mails could not have been sustained at trial, since the money orders were delivered through a post office station where appellant would not have had access to them.

2. A question is raised whether under the facts of this case the likelihood of prosecutorial vindictiveness is sufficiently real even to fall under the principle of *Blackledge.* For the purposes of this opinion we have assumed that it does.

drugs, Kelleher removed it from appellant's pocket. Finding in it a white powder (later identified as cocaine), Kelleher arrested appellant and brought him to the station house. It was not until then that the money orders were discovered.

Judge Griesa denied the motion to suppress, choosing to credit Kelleher's version of the facts and to reject appellant's. The issue before the court, therefore, is whether given the facts found by Judge Griesa, there was sufficient cause for officer Kelleher to seize the packet containing cocaine.[3] We hold that there was.

■ Under New Jersey law, officer Kelleher was entitled to arrest appellant for travelling 75 m.p.h. in a 55 m.p.h. zone. N.J.S.A. 39:5–25; *State v. Padavano,* 81 N.J.Super. 321, 195 A.2d 499 (1963). Had the officer arrested appellant, he would therefore have been fully entitled to search him, even though the arrest was based on a simple traffic violation. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). *See also Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). This case, of course, differs from *Robinson* in that officer Kelleher chose not to arrest appellant for the speeding violation, and the contested search was actually the cause of appellant's arrest. Nevertheless, the fact that Kelleher had cause to arrest appellant for speeding, even if he initially determined not to do so, was a sufficient predicate for a full search. *United States v. Jenkins,* 496 F.2d 57, 72–73 (2d Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *United States v. Riggs,* 474 F.2d 699, 702 (2d Cir.), *cert. denied,* 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973). As Judge Mansfield stated in *Jenkins,*

"The mere fact that the trooper reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of the search. . . . Any other holding would, without rational basis, exalt form over substance."

496 F.2d at 73 [citations omitted]. Officer Kelleher's search of appellant, therefore, was constitutionally justified.

The conviction below is affirmed.

---

**3.** Although appellant was convicted for possessing stolen mail, he has raised no direct challenge to the station house search which lead to the discovery of the mail, since there can be no dispute that if officer Kelleher's seizure of the cocaine was lawful, he was entitled to arrest appellant and subsequently search

him. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).