101 F.3d 682
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Ronald KORON, Defendant-Appellant.
 No. 95-1657.
 United States Court of Appeals, Second Circuit.
 April 23, 1996.
 
 APPEARING FOR APPELLANT: Gaspar M. Castillo, Jr., Castillo and Seigel, Albany, NY.
 APPEARING FOR APPELLEE: William C. Pericak, Assistant United States Attorney for the Northern District of New York, Albany, NY.
 N.D.N.Y.
 AFFIRMED.
 PRESENT: MINER, McLAUGHLIN and LEVAL, Circuit Judges.
 
 SUMMARY ORDER
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Northern District of New York, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 3
 This cause came to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Defendant-appellant Ronald Koron appeals from a judgment entered in the United States District Court for the Northern District of New York (Scullin, J.) convicting him, upon a plea of guilty, of possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The district court sentenced Koron to a 14-month term of imprisonment, a three-year term of supervised release, and a $100 special assessment.
 
 
 5
 In February of 1994, New York State Police Officer Richard Gildersleeve learned that a confidential informant had reported that Koron was selling cocaine in the Cobleskill, New York area and that Koron was making regular trips to New York City to purchase cocaine. In March of 1994, Gildersleeve learned that another confidential informant (the "Informant") had been purchasing cocaine from Koron. The Informant told Gildersleeve that Koron was selling between four and eight ounces of cocaine each week; was transporting cocaine from New York City to his residence in his blue Chevrolet pick-up truck; was making the trips to New York City each Wednesday, usually leaving his home at about 3:00 a.m. and returning before noon; and was traveling to New York City on the New York State Thruway.
 
 
 6
 The state police decided to conduct surveillance of Koron on Wednesdays. On Wednesday, May 18, 1994, at approximately 3:00 a.m., Gildersleeve observed that Koron's truck was not parked at his residence. Gildersleeve then parked his car and waited for Koron's truck near the Thruway exit. At approximately 10:30 a.m., Gildersleeve spotted Koron's truck and began to follow it. After observing the driver fail to signal a right-hand turn, Gildersleeve radioed a New York State Police officer, and requested that an officer in a marked police car stop the truck. Officer Michael Teets responded and stopped Koron's truck.
 
 
 7
 After the passenger of the truck identified himself as Koron, Gildersleeve asked him to step out of the truck. As Koron was getting out, he removed a jacket from the seat of the truck and put it on. Gildersleeve "pat searched" Koron, and felt a "round, almost cylindrical object" in the front pocket of the jacket. Gildersleeve removed the object and discovered that it was a package that appeared to contain cocaine. Gildersleeve then discovered a second package in Koron's jacket. Thereafter, Gildersleeve arrested Koron and the driver of the truck. Later, it was determined that the packages contained cocaine.
 
 
 8
 On June 7, 1994, an indictment was filed against Koron charging him with possession of cocaine with the intent to distribute, and conspiracy to possess cocaine with the intent to distribute. On July 6, 1994, Koron moved in the district court to suppress the cocaine, arguing that the warrantless search was illegal. The district court denied the motion on January 6, 1995. On January 9, 1995, Koron pleaded guilty to the two counts of the indictment, but reserved his right to appeal the district court's denial of his motion to suppress.
 
 
 9
 On appeal, Koron contends that Gildersleeve's warrantless search violated the Fourth Amendment, and therefore that the district court erred in denying his motion to suppress the cocaine. The government argues that the search was permissible pursuant to the "automobile exception." Under the automobile exception to the Fourth Amendment's warrant requirement, when a police officer believes that an automobile contains contraband or evidence of criminal activity, the officer may conduct a warrantless search of the automobile without violating the Fourth Amendment. See Carroll v. United States, 267 U.S. 132, 149 (1925).
 
 
 10
 Koron concedes that Gildersleeve possessed sufficient probable cause to believe that the truck contained cocaine. Koron, however, contends that the automobile exception does not apply because the cocaine was not discovered during a search of the truck, but instead, during a search of Koron's person. We disagree.
 
 
 11
 When Gildersleeve approached Koron's truck, the jacket containing the cocaine was visible on the front seat of the truck. Because the jacket was in the truck, Gildersleeve was entitled to search the pockets of the jacket pursuant to the automobile exception. The mere fact that, before Gildersleeve could search the jacket, Koron picked it up and put it on does not change the fact that the jacket was in the truck at the time the truck was stopped. Because Gildersleeve had probable cause to believe that the truck contained cocaine and because the jacket was found in the truck when the truck was stopped, Gildersleeve was entitled to search the jacket pursuant to the automobile exception.
 
 
 12
 In any event, even if we view the search as a search of Koron's person, the search is proper as incident to a lawful arrest. Under the "search incident to arrest" exception to the Fourth Amendment's warrant requirement, "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." Illinois v. Lafayette, 462 U.S. 640, 645 (1983). In order to make a warrantless arrest, "the police [must] have probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir.1987), cert. denied, 484 U.S. 1077 (1988). Moreover, we have held that, as long as a police officer has probable cause to arrest a suspect prior to searching the suspect, the search will be valid, even if the officer initially had no intention of arresting the suspect. United States v. Ricard, 563 F.2d 45, 49 (2d Cir.1977), cert. denied, 435 U.S. 916 (1978).
 
 
 13
 We believe that Gildersleeve had sufficient probable cause to arrest Koron when he stopped the truck. Gildersleeve had received detailed information from two informants who had advised the police of the quantity of cocaine Koron was selling each week, the source of Koron's cocaine, and the method by which Koron acquired the cocaine. The informants provided the police with Koron's method of travel, specifying that he drove to New York City on the New York State Thruway in his blue Chevrolet pick-up truck each Wednesday morning, leaving at approximately 3:00 a.m. and returning before noon. Moreover, on Wednesday, May 18th, Gildersleeve observed that Koron's truck was not parked at his residence at 3:00 a.m., and the following morning, observed Koron's truck heading towards Koron's residence. From the totality of these circumstances, Gildersleeve had probable cause to arrest Koron for possession of cocaine and past cocaine sales. Indeed, as Koron concedes, Gildersleeve had probable cause to believe that the truck contained cocaine and that Koron was in possession of cocaine. Therefore, the warrantless search was a proper search incident to a lawful arrest.
 
 
 14
 We have considered Koron's remaining contentions, and we find them all to be without merit.