15-3776-cr
*United States v. Diaz*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2016

(Argued:  November 29, 2016   Decided:  April 18, 2017)

Docket No. 15-3776-cr

───────────────────

UNITED STATES OF AMERICA,
*Appellee*,

v.

JOSE DIAZ,
*Defendant-Appellant*.

───────────────────

Before:    WALKER, SACK, and CHIN, *Circuit Judges*.

An officer observed the defendant in an apartment-building stairwell with an open container of alcohol, an apparent violation of New York City's open-container law.  The officer initially intended only to issue a summons for the violation, not to make an arrest.  But after discovering a firearm in the defendant's jacket pocket, she arrested him.  He was ultimately found guilty of possessing a firearm as a previously convicted felon, in violation of 18 U.S.C. § 922(g).  The principal question presented on appeal is whether the district court (Jesse M. Furman, *Judge*) erred in denying the defendant's motion to suppress the

gun on Fourth Amendment grounds. We conclude that it did not because the officer held an objectively reasonable belief that the defendant had violated the open-container law and the gun was discovered by means of a lawful search incident to an arrest.

AFFIRMED.

> ROBERT W. ALLEN (Anna M. Skotko, *on the brief*), Assistant United States Attorney, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, *for Appellee.*
>
> DANIEL HABIB, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellant.*
>
> Jordan Wells, Alexis Karteron, *(on the brief)*, *for Amicus Curiae New York Civil Liberties Union Foundation.*

SACK, *Circuit Judge*:

During a routine patrol of a Bronx apartment building, New York City Police Department ("NYPD") Officer Chris Aybar observed defendant Jose Diaz sitting in a stairwell while holding a plastic cup that seemed to Aybar to smell of alcohol. Officer Aybar initially intended only to issue Diaz a summons—not to make an arrest—for violating New York's open-container law. She ordered him to stand against the wall and produce identification. Diaz stood and then, as if to

retrieve something, fumbled with his hands in his jacket pockets and rearranged his waistband. Officer Aybar frisked Diaz and felt a bulge on the side of his jacket; she opened his jacket pocket and discovered a loaded handgun. She then arrested Diaz, who was later found guilty, by the presiding district judge (Jesse M. Furman, *Judge*) acting as trier of fact, of being a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He received a sentence of thirty-three months' imprisonment.

Before the trial, Diaz filed a motion to suppress evidence about the presence of the gun on Fourth Amendment grounds. The district court denied the motion, concluding that the search was a lawful search incident to an arrest supported by probable cause. Having thereafter been convicted, Diaz now appeals that denial, arguing that (1) Officer Aybar lacked probable cause to arrest and search Diaz for violating New York City's open-container law, N.Y.C. Admin. Code § 10-125(b), because an apartment-building stairwell is not a "public place" within the meaning of that law, and (2) in any event, the warrantless search was not a lawful search incident to an arrest because Officer Aybar did not intend to arrest Diaz when she began the search.

We disagree. We conclude that Officer Aybar had probable cause to arrest Diaz inasmuch as she had a reasonable belief that an apartment-building stairwell is a public place for purposes of the open-container law and that Diaz was violating that law. And because she had probable cause to arrest Diaz—and ultimately did arrest him—the warrantless search was a lawful search incident to an arrest, even though Officer Aybar testified that before finding the gun she intended only to issue a summons, not to make an arrest.

## BACKGROUND

On the night of March 21, 2015, NYPD Officers Chris Aybar and Jose Espinal entered a four-story, twelve-unit private apartment building located at 584 East 167th Street in New York City's Borough of the Bronx, to conduct a floor-by-floor patrol as part of the NYPD's "Clean Halls" program,[1] pursuant to which officers enter common spaces in residential buildings with the building owner's consent in an effort to deter crime, principally drug dealing and trespassing. Upon entering the apartment building through the front door,

---

[1] This program has also been referred to as "Operation Clean Halls" and the "Trespass Affidavit Program." *Ligo v. City of New York*, 925 F. Supp. 2d 478, 484-85, 517 (S.D.N.Y. 2013) (explaining that the "program allows police officers to patrol inside and around thousands of private residential apartment buildings throughout New York City" (internal quotation marks omitted)).

which was propped open with a newspaper,[2] the officers immediately smelled marijuana.

They proceeded to climb the stairs to the third-floor landing, where they saw three men: defendant Jose Diaz, Collin Maloney, and Joshua Knox. Diaz was sitting next to a bottle of vodka and holding a red plastic cup. As Officer Aybar approached Diaz, she saw clear liquid in the cup and smelled what seemed to be alcohol. Maloney was also holding a red plastic cup, and Knox was holding a lit "blunt" (marijuana cigarette) in one hand and a box of "roaches" (butts of smoked marijuana cigarettes) in the other.

Officer Aybar testified that she did not initially intend to arrest Diaz, only to issue him a summons for violating New York's open-container law,[3] which provides that "[n]o person shall drink or consume an alcoholic beverage, or possess, with intent to drink or consume, an open container containing an alcoholic beverage in any public place . . . ." N.Y.C. Admin. Code § 10-125(b). Officer Aybar had previously received training on the open-container law and

---

[2] The record does not disclose the identity of the person responsible for placing the paper there.

[3] Officer Aybar also testified that she intended to issue a summons to Maloney for an open-container offense, and to arrest Knox for marijuana possession.

had issued approximately fifty summonses for open-container violations, often in apartment buildings.[4]

Because Officer Aybar did not feel safe confronting Diaz while he was seated, she ordered him to stand against the wall and produce his identification. Diaz stood, and then, as if to retrieve something, fumbled with his hands in his jacket pockets and rearranged his waistband. Fearing, because of his movements, that her safety was threatened, Officer Aybar frisked Diaz and felt a bulge on his jacket. She opened his jacket pocket and discovered a loaded .380 caliber Taurus firearm. She then handcuffed Diaz and transported him to the police station, where she issued him a summons for the open-container violation.

On May 5, 2015, a grand jury returned a single-count indictment charging Diaz with possessing a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g). Diaz filed a motion to suppress evidence concerning the firearm on Fourth Amendment grounds. On July 24, 2015, during an evidentiary hearing on that motion, Diaz testified that (1) he was not drinking alcohol in the apartment-building stairwell; (2) he produced his identification when Officer

---

[4] Officer Aybar had previously arrested open-container-law violators who had open warrants.

6

Aybar asked for it; and (3) Officer Aybar took the jacket (which he was not wearing) from him and searched it rather than frisking him.

Following the hearing, the district court denied the suppression motion by opinion and order dated August 14, 2015. *See United States v. Diaz*, 122 F. Supp. 3d 165, 181 (S.D.N.Y. 2015). Crediting the officers' testimony[5] over that of Diaz, *id*. at 168, the district court found that "Officer Aybar indisputably had probable cause to believe that Diaz was drinking alcohol or possessing alcohol with intent to drink it," based on Officer Aybar's testimony that "she smelled alcohol" and "observed Diaz holding a red [plastic] cup containing a clear liquid while sitting in close proximity to an open bottle of vodka," *id*. at 173.

[5] The district court "decline[d, however,] to credit Officer Aybar's testimony in one critical respect": It explained that "[a]fter the [g]overnment's redirect examination, in response to additional questioning by the Court, Officer Aybar testified that Diaz refused to give his identification to her when asked, telling her that he didn't have [identification]," which was "potentially significant" because Officer Aybar had previously testified that if an individual who had committed an open-container violation did not have identification, "she would have to arrest him or her and verify who they were." *Diaz*, 122 F. Supp. 3d at 169 (internal quotation marks omitted). Notwithstanding Officer Aybar's testimony, the district court expressly declined to find that Diaz had refused to provide identification because (1) "Officer Aybar did not mention Diaz's alleged refusal [at any point] until the Court's questions"; and (2) "although Officer Aybar had testified that she would have had to arrest Diaz for violating the open-container law if he did not have identification, she unambiguously admitted that it was only after she found the gun in [his] pocket—which indisputably happened after any exchange about identification—that she decided to [] arrest him." *Id*. at 170 (internal quotation marks, citations, and brackets omitted).

The district court rejected Diaz's argument that Officer Aybar lacked probable cause to arrest him on the ground that an apartment-building stairwell is not a "public place" within the meaning of the open-container law. *See id*. at 173-76. It noted that "a compelling argument [could] certainly be made that the common areas of residential buildings do not qualify as public places for purposes of the [] law," but ultimately concluded that it "need not resolve that unsettled question of state law because, even if Officer Aybar was mistaken in her belief that the stairwell qualified as a 'public place' for purposes of the open-container law, her mistake was an objectively reasonable one" that did not violate the Fourth Amendment. *Id*. at 174.

The district court also rejected Diaz's argument that the search could not be justified as a search incident to an arrest because Officer Aybar did not intend to arrest Diaz until after she found the gun. *See id*. at 176-81. In reaching this conclusion, it relied on *United States v. Ricard*, 563 F.2d 45 (2d Cir. 1977), where we held that a search conducted in similar circumstances was a constitutional search incident to an arrest, *id*. at 49. The district court noted, however, a tension between *Ricard* and the Supreme Court's subsequent decision in *Knowles v. Iowa*, 525 U.S. 113 (1998), in which it held unlawful a search conducted after an officer

8

had already issued a citation for a traffic infraction. *See Diaz*, 122 F. Supp. 3d at 178-80 (citing *Knowles*, 525 U.S. at 117-19).[6]

After the district court denied Diaz's motion to suppress, the case proceeded to a bench trial on stipulated facts. On September 11, 2015, Diaz was found guilty of possessing a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g). He received a sentence of thirty-three months' imprisonment. This appeal followed.

## DISCUSSION

Diaz appeals from the denial of his motion to suppress evidence concerning the gun found in his jacket on the grounds that (1) Officer Aybar lacked probable cause to conduct the search, and (2) in any event, the warrantless search was not justified as a search incident to an arrest because Officer Aybar

---

[6] The district court "swiftly rejected" the government's alternative theory that the search was justified as a frisk on the basis of reasonable suspicion because, at the time of the search, there were not sufficient facts to establish reasonable suspicion that Diaz was armed and dangerous. *Diaz*, 122 F. Supp. 3d at 172 (citing *Terry v. Ohio*, 392 U.S. 1, 21, 27 (1968)).

did not intend to arrest him when she began the search. We disagree in both respects.[7]

### I. Standard of Review

"On appeal from a district court's ruling on a motion to suppress evidence, we review legal conclusions de novo and findings of fact for clear error." *United States v. Ganias*, 824 F.3d 199, 208 (2d Cir. 2016) (*en banc*) (internal quotation marks omitted). "We also review de novo mixed questions of law and fact," and "pay special deference to the district court's factual determinations going to witness credibility." *United States v. Bershchansky*, 788 F.3d 102, 108 (2d Cir. 2015) (emphasis and internal quotation marks omitted).

---

[7] Diaz also challenges his sentence on appeal. His only argument in this regard is that the district court erroneously concluded that his prior conviction for possession of a sawed-off shotgun qualified as a "crime of violence" pursuant to the then-applicable residual clause of section 4B1.2 of the United States Sentencing Guidelines ("Guidelines"), U.S.S.G. § 4B1.2(a)(2) (Nov. 2015) (defining a "crime of violence" as an offense that "is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*" (emphasis added)), which he contends is unconstitutionally vague in light of *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (holding that a nearly identical residual clause in the Armed Career Criminal Act was unconstitutionally vague). While this appeal was pending, however, the Supreme Court rejected this same argument on the ground that the void-for-vagueness doctrine does not apply to the Guidelines. *See Beckles v. United States*, 137 S. Ct. 886, 890 (2017); *see also id*. at 897-98 (Ginsburg, J., concurring) (explaining her view that, in any event, the residual clause of section 4B1.2 is not unconstitutionally vague as applied to a prior conviction for possession of a sawed-off shotgun because that offense is explicitly enumerated in the commentary of section 4B1.2). Accordingly, we reject Diaz's vagueness challenge.

**II.    Probable Cause**

Diaz's first argument fails because at the time of the search, Officer Aybar had probable cause to arrest Diaz for a violation of New York's open-container law based on a reasonable belief that an apartment-building stairwell is a public place for purposes of that law.

A police officer ordinarily has probable cause to arrest when he or she "ha[s] knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted).  An officer's assessment in this regard need not "be perfect" because "the Fourth Amendment allows for some mistakes on the part of government officials," including "reasonable . . . mistakes of law." *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014); *see also Herring v. United States*, 555 U.S. 135, 139 (2009) ("When a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to search or seizure has not necessarily been the victim of a constitutional violation.").

Officer Aybar's probable-cause determination was predicated on the New York open-container law, which provides that "[n]o person shall drink or consume an alcoholic beverage, or possess, with intent to drink or consume, an open container containing an alcoholic beverage in any public place," N.Y.C. Admin. Code § 10-125(b),[8] where "public place" is defined, in pertinent part, as "[a] place to which the public or a substantial group of persons has access, including, but not limited to, any highway, street, road, sidewalk, parking area, shopping area, place of amusement, playground, park or beach located within the city," *id*. § 10-125(a)(2). Diaz argues that the apartment-building stairwell where he was found with an open container of alcohol is not a "public place" because, although it is a common area, it is located within a locked residential building.[9] In his view, canons of construction such as *ejusdem generis* and *noscitur a sociis* support his construction of the open-container law. But as the district court correctly acknowledged, *Diaz*, 122 F. Supp. 3d at 174-75, the question presented here is not whether a common area of an apartment such as a stairwell

_____

[8] There is an exception to the open-container prohibition for "a block party, feast or similar function for which a permit has been obtained." N.Y.C. Admin. Code § 10-125(b). The exception does not apply here.

[9] The building's owner permitted NYPD officers to enter the property pursuant to the "Clean Halls" program. Although likely less pertinent, at the time the officers entered the apartment building, the front door was propped open with a newspaper.

constitutes a public place within the meaning of the open-container law, but only whether Officer Aybar had an objectively reasonable belief that it so qualified.

The Supreme Court's decision in *Heien* provides clear guidance in this regard. There, two North Carolina police officers found cocaine in a vehicle they had stopped because one of its two tail lights was inoperative, which the officers believed to be a violation of state law. *Heien*, 135 S. Ct. at 534, 540. This belief turned out to be mistaken; on appeal, a state appellate court determined that the applicable state law required only one working tail light. *Id*. at 535, 540. The Supreme Court held that the stop (and subsequent search), although premised on an erroneous understanding of the traffic law, was nonetheless constitutional because "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition," *id*. at 536, so long as that mistaken understanding was "objectively reasonable," *id*. at 539 (emphasis omitted).[10] That was so in *Heien* because, at the time of the stop, the North Carolina tail-light law was ambiguous,

---

[10] The *Heien* principle accommodates "the reality that an officer may suddenly confront a situation in the field as to which the application of a statute is unclear—however clear it may later become." *Heien*, 135 S. Ct. at 539 (internal quotation marks omitted). For example, "[a] law prohibiting 'vehicles' in the park either covers Segways or not, but an officer will nevertheless have to make a quick decision on the law the first time one whizzes by." *Id*. (citation omitted).

and the state's appellate courts had not previously resolved the ambiguity. *See id*. at 540.

The test for whether an officer's mistake of law was objectively reasonable "is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity," *id*. at 539, often where a party brings a claim under *Bivens*[11] or 42 U.S.C. § 1983 for a violation of their constitutional rights. *Cf. Heien*, 135 S. Ct. at 539-40 ("[A]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce."). Indeed, as Justice Kagan explained in her concurring opinion in *Heien*, "the test is satisfied [only] when the law at issue is so doubtful in construction that a reasonable judge could agree with the officer's view." *Id*. at 541 (Kagan, J., concurring) (internal quotation marks omitted); *see also United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016) (concluding that statutory ambiguity is a prerequisite to a determination that an officer's mistake of law

---

[11] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

was objectively reasonable); *United States v. Alvarado-Zarza*, 782 F.3d 246, 250 (5th Cir. 2015) (same).[12]

We think that Officer Aybar's belief that the apartment-building stairwell qualified as a "public place" within the meaning of the open-container law was an objectively reasonable prediction of the scope of the law when it was made. As in *Heien*, her assessment was premised on a reasonable interpretation of an ambiguous state law, the scope of which had not yet been clarified. Even now, the New York Court of Appeals has not addressed whether a common area inside an apartment building is a "public place" within the meaning of the open-container law, and the other New York courts that have done so have reached conflicting conclusions. *Compare People v. Medina*, 16 Misc. 3d 382, 389, 842

[12] In this respect, the label "mistake of law" may be a misnomer that could lead to confusion. The notion of a mistake seems to presuppose that the legal question was already settled, yet it is only when the legal question is unsettled that an officer's erroneous assessment of the law can be objectively reasonable. It may be useful, therefore, to think of such an assessment instead as an inaccurate *prediction* of law. In this light, the question is whether the officer's prediction as to the scope of the ambiguous law at issue was objectively reasonable—even if ultimately mistaken—such that a reasonable judge could have accepted it at the time it was made in light of the statutory text and the available judicial interpretations of that text. Formulated this way, the *Heien* principle has echoes of a defendant's due-process right to fair warning of the crime for which he or she is punished. *See Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) ("If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." (internal quotation marks omitted)).

N.Y.S.2d 227, 232, (Sup. Ct. Bronx Cty. 2007) (concluding that an apartment-building lobby is a "public place" for purposes of the open-container law), *with People v. Chavez*, 41 Misc. 3d 526, 533-34, 972 N.Y.S.2d 858, 862-63, (Crim. Ct. Bronx Cty. 2013) (concluding that an apartment-building elevator is not a "public place" within the meaning of the open-container law); *see also United States v. Brown*, No. 07-CV-232 (JBW), 2007 WL 2121883, at *2-4, 2007 U.S. Dist. LEXIS 54057, at *6-8 (E.D.N.Y. July 25, 2007) (relying on *Medina* to conclude that a bodega is a "public place" within the meaning of the open-container law).  In light of these conflicting precedents, Officer Aybar's belief that an apartment-building stairwell is a public place within the meaning of the open-container law was a reasonable, even if mistaken, assessment of the scope of that law at the time it was made.  Thus, contrary to Diaz's contention, Officer Aybar had probable cause to believe that Diaz had violated the open-container law.[13]

---

[13] We acknowledge that applying the *Heien* principle may come at a cost:  It may "ha[ve] the perverse effect of preventing or delaying the clarification of the law" inasmuch as "courts need not interpret statutory language but can instead simply decide whether an officer's interpretation was reasonable[,]" a "result [that] is bad for citizens, who need to know their rights and responsibilities, and . . . bad for police, who would benefit from clearer direction." *Heien*, 135 S. Ct. at 544 (Sotomayor, J., dissenting); *see also* Josh Bowers, *Annoy No Cop*, 166 PENN L. REV. (forthcoming 2017), at *34-35, *available at* https://ssrn.com/abstract=2928283 (last visited Mar. 22, 2017) (arguing that the effect of *Heien* is asymmetrical such that it harms citizens while it benefits

### III.   Search Incident to an Arrest

Diaz next contends that the search was not a lawful search incident to an arrest because, at the time of the search, Officer Aybar did not intend to arrest Diaz and would not have ultimately done so had she not discovered the gun as a fruit of the search.  We are not persuaded.

The search-incident-to-arrest doctrine is an exception to the general requirement that an officer must obtain a judicial warrant supported by probable cause before conducting a search.  *See Riley v. California*, 134 S. Ct. 2473, 2482 (2014) (recognizing a search incident to an arrest as a "specific exception" to the Fourth Amendment's warrant requirement).  It serves two interests: "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy."  *Arizona v. Gant*, 556 U.S. 332, 339 (2009).  These interests are not evaluated on a case-by-case basis, but are assumed to be present whenever an officer is justified in making an arrest.  *Riley*, 134 S. Ct. at 2483.  It makes no difference whether the search occurs before or after the arrest, *see Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980), so long as it is "substantially

---

officers).  We make no attempt here to clarify the ambiguity in the open-container law because it is a question of state law, the resolution of which is unnecessary to our conclusion.

17

contemporaneous with the arrest and is confined to the immediate vicinity of the arrest," *Shipley v. California*, 395 U.S. 818, 819 (1969) (internal quotation marks omitted).

In *United States v. Ricard*, 563 F.2d 45 (2d Cir. 1977), we squarely addressed whether a search incident to an arrest can be justified where an officer did not intend to make an arrest prior to conducting the search, *see id*. at 48. The officer there did not initially intend to arrest a driver stopped for speeding, but after a search of a small tinfoil packet revealed cocaine, the officer made an arrest. *Id*. at 48-49. We held that the search was lawful because the officer had probable cause to arrest the defendant for speeding, regardless of whether or not the officer intended to arrest the defendant before discovering the cocaine. *Id*. at 49 (explaining that, although "the contested search was actually the cause of [the defendant's] arrest[,] . . . the fact that [the officer] had cause to arrest [the defendant] for speeding, even if he initially determined not to do so, was a sufficient predicate for a full search [incident to an arrest]").

Diaz has conceded that *Ricard* controls if it continues to be precedential and therefore binding on us, but contends that it does not remain binding precedent in light of the Supreme Court's decision in *Knowles v. Iowa*, 525 U.S. 113

18

(1998).  There, a police officer, who had probable cause to arrest a defendant stopped for speeding, issued a citation for the speeding violation before conducting a full search of the car that revealed marijuana, prompting an arrest. *Id*. at 114.  The Supreme Court held that the arrest could not be justified as a search incident to an arrest.  *Id*. at 117-19.  Although it acknowledged "that the authority to conduct a full field search as incident to arrest [is] a bright-line rule" that is "based on the concern for officer safety and destruction or loss of evidence, but which d[oes] not depend in every case upon the existence of either concern," *id*. at 118 (internal quotation marks), the Court "decline[d]" to "extend that 'bright-line rule' to a situation where the concern for officer safety is not present to the same extent and the concern for destruction or loss of evidence is not present at all," namely where a citation for speeding had already been issued during a routine traffic stop, *id*. at 118-19; *see also id*. at 117-18 (explaining that "[t]he threat to officer safety from issuing a traffic citation . . . [was] a good deal less than in the case of a custodial arrest," and that the need-to-preserve-evidence rationale was not implicated because "[o]nce [the defendant] was stopped for

speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained").[14]

*Knowles* can in some respects be likened to *Ricard*. The officers in both cases had probable cause to arrest the defendants for speeding but initially elected not to do so, and then proceeded to conduct searches that revealed evidence of crimes for which the defendants were ultimately arrested. But critically, the search in *Knowles* occurred *after* the officer had completed the traffic stop by issuing a citation, whereas the search in *Ricard* (and the case at bar) occurred *before* any such event took place. It thus remained uncertain in *Ricard* (and here) whether the encounter would lead to an arrest; the dangers to the officer that accompany the prospect of arrest therefore remained present. *See Knowles*, 525 U.S. at 117 (explaining that "[t]he danger to the police officer flows from the fact of arrest, and its attendant proximity, stress, and uncertainty"

---

[14] As Diaz notes, the Sixth and Ninth Circuits have cited *Knowles* for the proposition that there can be no search or seizure incident to an arrest unless an arrest is made. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1153 (9th Cir. 2005) ("Had [the defendant] been arrested, ample precedent would permit a search or seizure incident to arrest." (internal quotation marks omitted)); *Bennett v. City of Eastpointe*, 410 F.3d 810, 824 (6th Cir. 2005) ("The mere fact that an officer has the *authority* to arrest an individual does not, and never has, automatically permitted the officer to conduct a pat-down search should he choose *not* to effectuate the arrest." (emphasis in original)). But those cases are of no help to Diaz, who was in fact arrested.

20

(internal quotation marks omitted)). In *Knowles*, by contrast, those dangers had virtually vanished by the time the officer issued the citation, which extinguished the prospect of an arrest. We therefore do not understand *Knowles* to foreclose a search incident to an arrest in circumstances where, as in *Ricard* and the case before us, an officer has not yet issued a citation and ultimately makes a lawful arrest after conducting a search, regardless of whether or not the officer intended to do so prior to the search. Where there is a basis for an arrest, an officer has reason to be concerned for her safety until she issues a citation and the stop ends. *Cf. Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) ("A seizure justified only by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." (internal quotation marks and brackets omitted)).

Our conclusion comports with those of other circuits addressing the scope of *Knowles*. *See, e.g., United States v. Chauncey*, 420 F.3d 864, 872 (8th Cir. 2005) (rejecting the defendant's "attempt[] to liken his case to *Knowles*" because "[w]hatever the officer's subjective intention, [] the record does not show that the officer had completed the traffic stop by the time he made a formal arrest"); *United States v. Bookhardt*, 277 F.3d 558, 566 (D.C. Cir. 2002) (limiting *Knowles* to

21

circumstances where "[an] officer [with] probable cause to make an arrest . . .

issues a citation instead of arresting the defendant"); *see also United States v.*

*Williams*, 170 F. App'x 399, 405 (6th Cir. 2006) (unpublished opinion) (concluding

that there is a "significant difference between *Knowles* and the present case"

because "[i]n *Knowles*, the officers issued the defendant a citation *before* they

searched the vehicle" (emphasis in original)).

Arguing otherwise, Diaz asserts that *Knowles* stands for a broader

proposition that overrules *Ricard*:  An officer may conduct a search incident to an

arrest only if she has already made an arrest or an arrest is impending.  In

support of this interpretation, he points to a recent New York Court of Appeals

decision addressing the scope of *Knowles*.  *See People v. Reid*, 24 N.Y.3d 615, 26

N.E.3d 237, 2 N.Y.S.3d 409 (2014).  There, an officer who had probable cause to

arrest a driver for driving while intoxicated ordered the driver out of the car,

patted him down, discovered a switchblade knife, and arrested him for criminal

possession of a weapon.  *Id*. at 618, 26 N.E.3d at 238, 2 N.Y.S.3d at 410.  The

officer testified that he did not initially intend to arrest the driver, but decided to

do so only after he found knife.  *Id*.  Relying on *Knowles*, the court held that the

search was unconstitutional on the ground that "to say that the search was

22

incident to arrest does not make sense" where "but for the search there would have been no arrest at all." *Id*. at 619, 26 N.E.3d at 239, 2 N.Y.S.3d at 411.

We think his rationale is mistaken for two reasons. First, it ignores that an officer who stops a person to issue a citation faces an evolving situation. As events develop and new information becomes available—the presence of a gun, for example—a police officer is entitled to change her course of action. *Cf. Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments[ ]in circumstances that are tense, uncertain, and rapidly evolving. . . ."). Second, it appears to require a court to consider the officer's intent at the time of arrest, an inquiry at odds with the Supreme Court's "repeated[] reject[ion of] a subjective approach" in the Fourth Amendment context. *Fernandez v. California*, 134 S. Ct. 1126, 1134 (2014) (internal quotation marks omitted); *see also Kentucky v. King*, 563 U.S. 452, 464 (2011) ("[W]e have never held, outside limited contexts such as an inventory search or administrative inspection . . . , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment." (ellipsis in original) (internal quotation marks omitted)).

Diaz insists that no subjective inquiry is necessary to determine whether an arrest was occurring or about to occur at the time of the search. That question, in his view, can be answered on a case-by-case basis by looking only to objective evidence such as, *inter alia*, an officer's contemporaneous statements, the length of any pre-search detention, the issuance of a citation, calls for backup, the presence or absence of handcuffs, and the treatment of similarly situated suspects at the scene.

But even if limited to objective evidence, the case-by-case approach runs counter to the principle "that the authority to conduct a full field search as incident to arrest [is] a bright-line rule." *Knowles*, 525 U.S. at 118 (internal quotation marks omitted). The Supreme Court has long recognized that in the Fourth Amendment context, there is "[a] need for [] bright-line constitutional standard[s]," *Virginia v. Moore*, 553 U.S. 164, 175 (2008), which advance the "essential interest in readily administrable rules," *Atwater v. City of Lago Vista*, 532 U.S. 318, 347 (2001). This interest undergirds the well-settled principle that searches incident to arrest are categorically justified and do not require "case-by-case adjudication" of their safety and evidentiary bases. *United States v. Robinson*, 414 U.S. 218, 235 (1973).

24

Thus, we conclude that, contrary to the *Reid* court's interpretation, *Knowles* does not require case-by-case determinations as to whether or not an arrest was impending at the time of the search; it instead stands for the proposition that the bright-line search-incident-to-arrest doctrine does not apply where an officer has completed the encounter by issuing a citation instead of making an arrest.[15]  That proposition of law has no bearing on *Ricard*, which therefore remains binding precedent that controls our analysis of this appeal.  Accordingly, Officer Aybar's

---

[15] Diaz also points to a recent decision by the California Supreme Court, *People v. Macabeo*, 1 Cal. 5th 1206, 384 P.3d 1189, 211 Cal. Rptr. 3d 34 (2016), as further support for his contention that a search incident to an arrest is not justified where there is no actual or impending arrest at the time of the search.  In *Macabeo*, police officers stopped the defendant for riding a bicycle through a stop sign, an infraction under California law; during the stop, they seized his cell phone, found child pornography, and arrested him on that basis. *See id*. at 1210-12, 384 P.3d at 1191-92, 211 Cal. Rptr. 3d at 36-38.  Relying on *Knowles*, the California Supreme Court concluded that the cell-phone search was not a valid search incident to an arrest because (1) under California state law, officers could only issue a citation—not make an arrest—for the stop-sign infraction, and (2) there was no "objective indicia to suggest . . . that the officers would have arrested [the] defendant [for the stop-sign infraction]." *Id*. at 1219, 384 P.3d at 1197, 211 Cal. Rptr. 3d at 43-44. Even assuming *Macabeo* is persuasive, and we are not without our doubts, it is inapplicable here:  The state law there did not authorize the officers to arrest the defendant for the stop-sign infraction, *id*., whereas here, no New York law prohibited Officer Aybar from arresting Diaz for the open-container violation.  Moreover, the analytical framework of *Macabeo* can be distinguished from our analysis here because the California Supreme Court was not faced with a precedent, like *Ricard*, holding that a search incident to an arrest is justified where an officer had probable cause to arrest the individual and ultimately made an arrest, even if he or she did not intend to make the arrest at the time of the search. *See Ricard*, 563 F.2d at 48-49.  Indeed, the *Macabeo* court addressed the question as a matter of first impression in light of *Knowles*, whereas we must apply *Ricard*, which we conclude remains binding precedent after *Knowles*.

search of Diaz was a valid search incident to an arrest, despite the fact that she did not intend to arrest him when she began the search. *See Ricard*, 563 F.2d at 48-49.[16]

* * *

In sum, we conclude that in the context of the facts of the case at bar, an officer like Officer Abyar, who has probable cause to believe that a person has committed a crime, may lawfully search that person pursuant to the search-incident-to-arrest doctrine, provided that a "formal arrest follow[s] quickly on the heels of" the frisk. *Rawlings*, 448 U.S. at 111. It was irrelevant whether, at the time of the search, Officer Aybar intended to arrest Diaz or merely to issue him a citation.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[16] We do not address whether the search was a lawful *Terry* search because we conclude that the search was a lawful search incident to an arrest.